UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Deserie M. Darden,          :
    Plaintiff,              :
                            :     Case No. 04cv1168 (JBA)
v.                          :
                            :
Town of Stratford,          :
    Defendant.              :

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. # 20] AND DEFENDANT'S MOTION TO STRIKE [DOC. # 37]**

Plaintiff Deserie M. Darden ("Darden") brings this race discrimination action against her former employer, the Town of Stratford (the "Town"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60, asserting that the Town discriminated and retaliated against her in connection with a reorganization of the Town Clerk's Office, which effectively eliminated a vacant position to which plaintiff sought to be promoted, and through her eventual termination from Town employment.  Defendant moves for summary judgment contending that there is no evidence from which a reasonable jury could conclude that the Town either discriminated against plaintiff or retaliated against her in violation of Title VII and the CFEPA.  See [Doc. # 20].  For the reasons that follow, defendant's Motion for Summary Judgment will

be granted in part and denied in part.[1]

## I.   Factual Background

Plaintiff Darden is an African American woman and a resident of Stratford, Connecticut.  She began working for the Town in July 1991 as a police dispatcher and in June 1999 took a position as a clerical specialist in the Town Clerk's Office. [Darden Aff. [Doc. # 35, Appx. A] ¶¶ 3, 11; Darden Dep. [Doc, # 35, Ex. 44] at 16, 21-23; Ulatowski Aff. [Doc. 23-3] ¶ 16.  At all relevant times, plaintiff has been a part of a clerical bargaining unit represented by the Stratford Federation of Municipal Employees, Local Union 136, International Federation of Professional and Technical Engineers, AFL-CIO, CLC ("Local 136").  Ulatowski Aff. ¶ 3.  The Town and Local 136 have been party to a series of collective bargaining agreements ("CBA") which govern the terms and conditions of employment for the various clerical positions, including those of clerical specialist and assistant town clerk. Id.  Under the CBA in effect in the late 1990s, vacancies for covered clerical positions were required to be awarded to the most senior employee who met the minimum job qualifications,

---

[1]   Defendant has also filed a Motion to Strike, objecting to three exhibits and certain deposition testimony submitted with plaintiff's opposition to defendant's Motion for Summary Judgment.  See Def. Motion to Strike [Doc. # 37] (seeking to strike plaintiff's exhibits 1, 6, 28, and plaintiff's deposition testimony at pages 104-06 as, inter alia containing inadmissible hearsay).  Defendant's Motion to Strike is DENIED as moot as the Court does not rely on any of the disputed evidence in this ruling.

taking into consideration the applicant's record of any disciplinary, attendance, or performance problems.  Id. ¶ 4; Barnhart Aff. [Doc. # 23-4] ¶ 4 & Ex. B.  In 1996 and 1997, plaintiff applied for vacant positions in the Town Clerk's office, but those positions were awarded to employees who were Local 136 members and who had more seniority than plaintiff. Darden Dep. at 25-28; Ulatowski Aff. ¶ 5.[2]

When plaintiff assumed her position as clerical specialist in the Clerk's Office in June 1999, the office was composed of the Town Clerk, Patricia Ulatowski, two assistant town clerks, Ann DeLottinville and Patricia Knapp (a/k/a Patricia Fressola), and a clerical specialist (plaintiff).  During plaintiff's initial 90-day probationary period, Ulatowski rated plaintiff's performance as excellent, based on her own observations and those of the two assistant town clerks.  Ulatowski Aff. ¶ 18.  Over the next year and a half, Ulatowski authorized plaintiff to attend town clerk training classes at the Town's expense to prepare her to advance from clerical specialist to an assistant town clerk position, Ulatowski Aff. ¶ 22; Darden Aff. ¶ 13, and told

_____

[2]  One such successful bidder was Patricia Eller, an African American woman who was promoted to assistant town clerk from her job as an accounts payable clerk on August 27, 1997.  Eller worked as an assistant town clerk for four and a half days before calling in sick and electing to return to her previous position. Ulatowski Aff. ¶ 13; DeLottinville Aff. [Doc. # 23-1] ¶ 10. Plaintiff alleges that Eller was not given the same training leeway and opportunities as Caucasian incoming assistant town clerks.

plaintiff that she was "the logical person to fill the assistant town clerk position when it became vacant," Darden Aff. ¶ 12. The Town Clerk's office was a busy and fast-paced office and plaintiff testified that Ulatowski had high standards, was a demanding boss, and acted in a bullying manner to many employees, including plaintiff.  Agmt. Def. L.R. 56(a)1 Stmt [Doc. #22] ¶¶ 28-29 (citing Darden Dep. at 36, 58-59).  Plaintiff testified that she only had two "problems" with Ulatowski, the first a January 2000 conversation regarding plaintiff's weight and the second in the summer of 2000 when Ulatowski demanded that plaintiff produce a copy of her deceased relative's obituary when plaintiff refused to return from bereavement leave one day early. Id. ¶ 32 (citing Darden Dep. at 50-57).

In the first half of 2000, both DeLottinville and Knapp complained to Ulatowski that plaintiff had been falling behind and that they had been doing some of her work in order to catch up.  Ulatowski Aff. ¶ 23; DeLottinville Aff. ¶ 13.  Ulatowski met with plaintiff to discuss the complaints, which plaintiff was surprised to hear, and plaintiff stayed late thereafter trying to minimize the backlog of work.  Ulatowski Aff. ¶¶ 25-26.  During the summer of 2000, Ulatowski spent a week in the front office working with plaintiff and concluded that plaintiff was not a very fast worker, but was working diligently and doing the best job that she could.  She informed the assistant town clerks of

her observations and told them they would have to continue to assist plaintiff so that all the work would get done.  Ulatowski Aff. ¶ 26.

In May 2001, Knapp transferred to the Town police department, leaving a vacant assistant town clerk position. Ulatowski Aff. ¶ 27.  Upon Knapp's departure, Ulatowski held a meeting with plaintiff and DeLottinville and announced that she was planning to take advantage of the vacancy to conduct a study of the organizational structure of other Connecticut town clerk's offices and assess whether the Stratford Town Clerk's office should be restructured.  Darden Dep. at 72; Ulatowski Aff. ¶¶ 27-29; DeLottinville Aff. ¶ 4.  According to plaintiff, Ulatowski told her "Dese, this meeting is mainly for you . . . I'm the Town Clerk and I can do whatever I want . . . I can go out on the street and hire anybody off the street and I'm not sure what I'm going to do with the vacancy."  Darden Dep. at 71.

Over the next two months, the assistant town clerk position remained vacant while Ulatowski conducted her study, ultimately recommending that one of the assistant town clerk positions be eliminated and replaced with an assistant registrar of vital statistics, that the clerical specialist position be eliminated and replaced by a land records/state licensing clerk, and that the remaining assistant town clerk position be given supervisory

responsibilities and be renamed deputy town clerk.[3]  Ulatowski
Aff. ¶¶ 31, 33 & Ex. B.  Town Manager Mark Barnhart agreed with
Ulatowski's suggestion of adding supervisory responsibilities to
one of the assistant positions, but wanted to maintain
flexibility in job duties and descriptions and therefore
determined there should be two clerical specialists, rather than
the two more specialized positions proposed by Ulatowski.  Id. ¶
35.  The Town and Local 136 began negotiating regarding the
proposed reorganization in the summer of 2001.

On August 24, 2001, shortly before the reorganization of the
Clerk's office was announced, plaintiff went out on an extended
paid sick leave of absence.  Id. ¶ 37; Darden Aff. ¶ 21.  Under
the provisions of a Town ordinance and the CBAs between the Town
and various unions, Town employees are entitled to "unlimited
Sick Leave [with pay,] provided that no continuous Sick Leave
shall extend for a period of more than a year and a day."
Barnhart Aff. ¶ 9 & Ex. D.  In September 2001, after declaring an
impasse in negotiations with Local 136, the Town implemented the
organizational changes that Barnhart had authorized: one
assistant town clerk was given supervisory responsibilities and
an increased pay grade, and became part of the supervisory
employee bargaining unit; the two clerical specialist positions

_____

[3]  Between May 14, 2001 through August 30, 2001, plaintiff
kept a journal recording work events on an almost daily basis.
See Affidavit of Warren L. Holcomb [Doc. # 23-5], Ex. 1.

remained part of Local 136 unit, with a level 6 pay grade.  On
September 17, 2001 the Town posted as vacant the positions of
assistant town clerk (even though DeLottinville was still working
at the office as an assistant town clerk) and a clerical
specialist.  Darden Aff. ¶ 27.  In September or October 2001, the
open clerical specialist position was filled by Patricia Moore,
an African American woman.  Plaintiff applied for the posted
assistant town clerk position, but was rejected and Ann
DeLottinville was placed in the position as she had more
seniority.  Darden Aff. ¶ 28; Darden Dep. at 240.  In November
2001, Kathy Patrick, a Caucasian woman, was hired as a full-time
temporary employee to fill plaintiff's clerical specialist
position in plaintiff's absence.  Darden Aff. ¶ 32.

On December 14, 2001, plaintiff filed a charge with the
Connecticut Commission on Human Rights and Opportunities ("CHRO")
alleging race discrimination, which charge defendant received by
mail on January 7, 2002.  Borer Aff. [Doc. # 23-2] Ex. C.  On
December 31, 2001, defendant terminated plaintiff's paid sick
leave, Darden Aff. ¶ 37 & Ex. 14, and during March and April
2001, instructed plaintiff to see Town doctors for examination
and assessment, Darden Aff. ¶¶ 41-42; plaintiff was subsequently
retroactively reimbursed for the unpaid sick leave, after she
complied with defendant's requests to see additional doctors, id.
Ex. 21.  The second of these doctors, Dr. Rubenstein, reported to

the Town that it was "doubtful that Ms. Darden presently has any significant work capacity" and that it was "highly likely with a reasonable degree of medical/psychiatric certainty that Ms. Darden is temporarily totally disabled from any employment." Id. Ex. 20.

On May 23, 2002, acting Town Manager Michael Feeney informed plaintiff that given the doctor's assessment, "it would appear that [she was] no longer capable of performing [her] job duties with the Town" and thus, unless plaintiff could prove "to the contrary," her employment would be terminated effective May 31, 2002; plaintiff was ultimately terminated on May 31, at which point plaintiff's sick leave benefits also ceased. Darden Aff. Ex. 21; Ulatowski Aff. ¶ 45. Subsequent to plaintiff's termination, in August 2002, the Town filled plaintiff's vacated position of clerical specialist with a Caucasian woman, Marianne Carney. Darden Aff. ¶ 54 & Ex. 32. In late October 2002, the Town adopted one of Ulatowski's initial reorganization recommendations and reclassified one of the clerical specialist positions as assistant registrar of vital statistics with a higher pay grade, and Patricia Moore (then a clerical specialist) bid into the position. Ulatowski Aff. ¶ 43.

On August 7, 2003, following an arbitration initiated by Local 136 on behalf of plaintiff concerning her termination, plaintiff was awarded back pay and the Town was directed to

reinstate her to her former or an equivalent position.  Darden

Aff. ¶ 63 & Ex. 33.  Plaintiff was reinstated in a clerical

position in the tax assessor's office at the same pay grade of

her previous position, although plaintiff testified that the

position was actually a pay grade 5 job, and her fellow clerk was

paid at grade 5, but plaintiff's pay was upgraded.  Id. ¶ 63.

Meanwhile, in July 2003, DeLottinville retired as assistant town

clerk and on September 3, 2003, plaintiff applied for the open

position.  Id. Ex. 35.  Effective September 29, 2003, Kimberly

Correia, a Caucasian woman, was hired from the outside as

assistant town clerk.  Id. ¶ 66 & Ex 37; Darden Dep. at 242-43;

Ulatowski Dep. [Doc. # 35, Ex. 43] at 38.

## II.  Standard

Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with affidavits . . . show that there is no genuine

issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  A party seeking summary judgment "bears the burden of

establishing that no genuine issue of material fact exists and

that the undisputed facts establish [its] right to judgment as a

matter of law."  Rodriquez v. City of N. Y., 72 F.3d 1051, 1060

(2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144,

157 (1970)).  "The duty of the court is to determine whether

9

there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted).  "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation and citation omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "A defendant need not prove a negative when it moves for

10

summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient.  Matsushita, 475 U.S. at 586 (citations omitted).

III. Discussion

    A.   **Title VII Framework**

As the parties acknowledge, this race discrimination case should be analyzed under the McDonnell Douglas/Burdine three-prong burden-shifting framework.[4]  Under that framework, plaintiff first must establish a prima facie case of discrimination on account of race.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  To do so, she must prove: (1) membership in a protected class; (2) qualification for her position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of her membership in the protected class.  See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate "a legitimate, nondiscriminatory reason" for plaintiff's adverse employment action; "[t]his burden is one of production, not persuasion; it can involve no credibility assessment."  Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000) (internal citations,

---

    [4]  Plaintiff's CFEPA claims, as well as her Title VII claims, are analyzed under this framework.  See Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003) (McDonnell Douglas analysis applicable to plaintiff's state-law CFEPA claims); accord Dep't of Transp. v. Comm'n on Human Rights and Opportunities, 272 Conn. 457, 463 & n.9 (Conn. 2005).

quotations, and alterations omitted).  It is satisfied if the proffered evidence "'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'"  Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  "Although the burden of production shifts to the defendant, the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff."  Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

If defendant articulates a race-neutral basis for the adverse employment action(s), the burden then shifts back to plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  Weinstock, 224 F.3d at 42.  The plaintiff "may attempt to establish that [s]he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."  Reeves, 530 U.S. at 143.  Thus, a plaintiff's prima facie case combined with sufficient evidence to find that the defendant's proffered justification is pretextual will be sufficient to survive summary judgment because a jury would be permitted to infer from such evidence that defendant's real reason for the employment action was discriminatory.  Id. at 148.

13

**B.    Discrimination Claim**

<u>Prima Facie Case</u>

Defendant does not dispute that plaintiff meets the first element of her prima facie case because she is African American. For purposes of the summary judgment proceedings, defendant also does not dispute the second element of the prima facie case. However, defendant contends that plaintiff did not suffer an adverse employment action and that there is no evidence in the record which could give rise to an inference of discrimination on the basis of plaintiff's race.

While plaintiff was not directly denied a promotion, the position to which she sought to be promoted was eliminated under Ulatowski's reorganization of the Town Clerk's Office.  Thus, an indirect result of the restructuring was that plaintiff was denied a promotion she anticipated she would receive.  At least one other court has refused to grant summary judgment on these grounds in similar circumstances, where "the position to which [plaintiff] aspired was eliminated, thereby arguably foreclosing a logical promotion path," stating "[t]his Court is not prepared to say . . . that no trier of fact reasonably could conclude that [plaintiff] suffered a material adverse employment action." <u>Feder v. Bristol-Myers Squibb Co.</u>, 33 F. Supp. 2d 319, 325 (S.D.N.Y. 1999).  For the same reasons, the Court concludes there is evidence in the record from which a reasonable juror could

14

conclude that the restructuring of the Town Clerk's Office, resulting in the elimination of the vacant assistant town clerk position to which plaintiff sought to be promoted, constituted an adverse employment action.[5]

Next, defendant argues that even if an adverse employment action were established, there is no evidence in the record from which a jury could conclude that the circumstances of that action give rise to an inference of discrimination.  In typical failure-to-hire or failure-to-promote cases, evidence that the position was filled by a person outside of the plaintiff's protected class will generally suffice to meet the fourth prong of the prima facie case.  See, e.g., Holt v. KMI-Cont'l, Inc., 95 F.3d 123, 129 (2d Cir. 1996).  Here, this bright-line rule is inapplicable because the position to which plaintiff sought to be promoted was eliminated rather than filled by another individual.  Nevertheless, viewed in the light most favorable to the

---

[5] An adverse employment action is a "materially adverse change in the terms and conditions of employment."  Weeks v. N.Y. State Division of Parole, 273 F.3d 76, 85 (2d Cir. 2001), abrogated on other grounds by, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  The Second Circuit has defined this requirement "broadly," to include "refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" as well as "lesser actions" that may meet the adversity threshold based on the factual circumstances and context of the action.  See Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006) (citing, inter alia, Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) for the proposition that "whether an undesirable employment action qualifies as being "adverse" is a heavily fact-specific, contextual determination").

plaintiff, the summary judgment record contains evidence of circumstances that could give rise to an inference of discrimination, including that besides Patricia Eller's four day stint in the Clerk's office, no African American has had the job of assistant town clerk in Stratford, that the woman hired to replace plaintiff while she was out on sick leave was Caucasian, and that when a vacancy eventually arose for an assistant town clerk in September 2003, plaintiff was denied the promotion and a Caucasian woman was hired who was not a member of Local 136.  Cf. Meiri v. Dacon, 759 F.2d 989, 995-96 (2d Cir. 1985) (rejecting standard requiring that an employee demonstrate that she was replaced by a person outside her protected class in order to make out her prima facie case, noting "[t]he elements of proof in employment discrimination cases were not intended to be rigid, mechanized or ritualistic").

        Pretext

    Defendant has met its burden of articulating a legitimate non-discriminatory reason for the adverse employment action, namely that a reorganization was required to combat the heavy workload and inefficiencies in the Clerk's office and that the elimination of the second assistant town clerk position would

    help to mitigate these problems.  Thus, the burden shifts back to plaintiff to come forward with evidence that the defendant's proffered legitimate nondiscriminatory reason is

pretextual, thus supporting the inference that the real reason for the adverse employment action was discriminatory.  See Schnabel, 232 F.3d at 90 (this step requires "a case-by-case analysis, with a court examining the entire record to determine whether the plaintiff could satisfy [her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff") (internal quotation omitted).

Plaintiff claims that although "employers have the right to restructure jobs and job responsibilities, . . . they cannot use that process to implement discriminatory objectives."  Pl. Opp. [Doc. # 35] at 4 (citing Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995)).  Plaintiff argues that defendant's real motivation can be inferred from, inter alia, the fact that no African American has ever had the position of assistant town clerk, other than Pat Eller who transferred after four days, the prior denials of plaintiff's promotion applications in favor of Caucasian females, defendant's shifting and inconsistent reasons for the reorganization, and defendant's "ongoing animus" towards plaintiff.  However, even when viewed in the light most favorable to plaintiff, the summary judgment record presents no evidence from which an inference of pretext or discrimination could be drawn.

While plaintiff characterizes defendant's stated motivation

17

for the restructuring as shifting and inconsistent – pointing to the fact that although the reorganization was intended to remedy inefficiencies, Ulatowski's proposal was criticized as being top-heavy and the reorganized structure did not add any additional staff – Ulatowski acknowledged from the beginning that the budget did not allow for additional staff and the reorganization that was implemented alleviated the top-heavy concerns by having only one assistant town clerk and two clerical specialists.  Further, while plaintiff cites to newspaper articles and Ulatowski's deposition testimony in which Ulatowski expressed dissatisfaction with plaintiff's performance as a clerical specialist, defendant has never contended that the reorganization was prompted by plaintiff's performance, and therefore this evidence shows no shifting or inconsistent motivations indicative of pretext.[6]

Additionally, the evidence in the record concerning plaintiff's employment history at the Clerk's office does not hint that the reorganization was prompted by any racial animus

---

[6]  Plaintiff also argues that Ulatowski's decision to keep the assistant clerk position vacant pending implementation of the reorganization was "baffling," given that the Clerk's office was already understaffed.  However, this claim alone does not undermine the legitimacy of defendant's proffered reasons for engaging in the reorganization, including keeping the position vacant pending determination of whether it would be eliminated. See Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("[T]he reasons tendered need not be well-advised, but merely truthful . . . the distinction lies between a poor business decision and a reason manufactured to avoid liability.").

18

rather than the claimed organizational inefficiencies.  Indeed,
Ulatowski – the person who initiated and recommended the
reorganization – gave plaintiff excellent reviews, stood up for
plaintiff as a hard worker when her performance was criticized by
the assistant town clerks, and authorized her going to Town
Clerk's school at defendant's expense in anticipation of eventual
promotion.  These actions are inconsistent with an inference of
racial motivation.[7]  Likewise, the two problems plaintiff
acknowledged she had with Ulatowski during her tenure at the
Clerk's office (a discussion about plaintiff's weight and
Ulatowski's demand that plaintiff produce an obituary to justify
her bereavement leave) do not implicate race.  Similarly, neither
plaintiff's daily journal notes nor her testimony concerning the
meeting she had with Ulatowski in May 2001 concerning the
reorganization, while potentially highlighting that Ulatowski was
a demanding and difficult boss, raise any inference of the
existence of racial animus or discrimination.  See Darden Dep. at
71 (Ulatowski told plaintiff that the meeting was "mainly for
[her]" and that she could hire "someone off the street" to fill

_____

[7] Cf., Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560
(2d Cir. 1997) ("Although each case must involve an examination
of all the circumstances, some factors strongly suggest that
invidious discrimination was unlikely.  For example, when the
person who made the decision to fire was the same person who made
the decision to hire, it is difficult to impute to her an
invidious motivation that would be inconsistent with the decision
to hire.").

the vacancy"); Holcomb Aff. Ex. (plaintiff's notes dated between May and August 2001).

While it is true that during the pendency of plaintiff's sick leave, a Caucasian woman was hired to do her job, that woman was admittedly not a permanent replacement (she left the office in May 2002) and thus her hiring cannot give rise to any inference of pretext or discrimination.[8]  Likewise, while a Caucasian woman was hired to fill plaintiff's position upon her termination, plaintiff's claim of discrimination is centered on the reorganization and failure to promote her to assistant town clerk upon Patricia Knapp's transfer, not on plaintiff's termination, in which Ulatowski was not involved.  Moreover, a subsequent opening for a clerical specialist was filled by an African American woman, Patricia Moore, who was later promoted to assistant registrar.[9]

———————————

[8]  For this reason, plaintiff's case can be distinguished from cases such as Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000), where a defendant claims reduction in work force/reorganization as the reason for a plaintiff's termination and plaintiff's job is thereafter immediately filled; in this case, notwithstanding the hiring of a temporary replacement, plaintiff's job was kept open while she was out on sick leave.

[9]  This fact contradicts any potential inference that could be drawn from the fact that Patricia Eller performed as assistant town clerk for only four days before returning to her previous position, and allegedly was not given the same training opportunities as previous Caucasian assistant town clerk candidates.  Any such inference is further undermined by the fact that plaintiff was given a 90-day probation/training period when she commenced employment at the Town Clerk's office.  That plaintiff was denied promotions to the Town Clerk's office prior

Thus, there is simply no evidence in the summary judgment record from which a reasonable jury could conclude that defendant's proffered reasons for leaving the assistant town clerk position vacant and for reorganizing the Clerk's office are pretextual, and that the real reason was discriminatory. Defendant's Motion for Summary Judgment on plaintiff's discrimination claims is therefore granted.

## C.    Retaliation Claim

To establish a prima facie case of retaliation, an employee must show "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). The same 3-step burden-shifting analysis applies to retaliation claims as applies to Title VII discrimination claims. See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991).

Defendant contends that plaintiff cannot satisfy the elements of a prima facie retaliation claim because there is no evidence suggesting a causal connection between any protected

_____

to her assuming the clerical specialist position in June 1999 does not suggest pretext or discrimination because plaintiff admits that those vacancies were filled, pursuant to the CBA, by applicants with more seniority.

activity and an adverse employment action because defendant terminated plaintiff's sick leave benefits prior to receiving plaintiff's CHRO charge, and plaintiff's eventual termination was effected more than four months after such receipt.

In fact, plaintiff can demonstrate a prima facie claim of retaliation because she engaged in protected conduct which was closely followed temporally by decisions to terminate plaintiff's sick leave benefits, to require plaintiff to consult with two additional doctors concerning her condition, and ultimately to discharge plaintiff in violation of the CBA between defendant and Local 136 (see Barnhart Aff. Ex. D).  First, "protected activity" includes both formal and informal complaints about practices believed to be discriminatory.  See Kotcher v. Rosa & Sullivan Appliance Ctr. Inc., 957 F.2d 59, 65 (2d Cir. 1992) (filing of internal complaint constituted "protected activity"); Robinson v. Time Warner, Inc., 92 F. Supp. 2d 318, 332 (S.D.N.Y. 2000) ("Informal as well as formal complaints, including complaints to management, constitute protected oppositional activity.").  Plaintiff contends that even before she filed her CHRO charge in mid-December 2001, she had informally accused defendant of reorganizing the Clerk's office to avoid promoting plaintiff to the position of assistant clerk because of her race.  This thus strengthens the temporal connection between plaintiff's protected activity and the termination of plaintiff's sick leave benefits

on December 31, 2001, apparently approximately one week before the Town became aware of plaintiff's formal CHRO charge. Additionally, even without this link, that only approximately four months elapsed between when the Town received notice of plaintiff's CHRO charge and when plaintiff was terminated is evidence such that a reasonable jury could infer a causal connection between the two.[10]  This is particularly so where in the intervening months plaintiff was subjected to two additional doctor's examinations to confirm a medical condition she maintains she had already documented, and where defendant's termination of plaintiff was in violation of a CBA provision. Thus, plaintiff has adduced sufficient evidence to survive summary judgment on her prima facie claim of retaliation.

Defendant next contends that it has articulated a legitimate nondiscriminatory reason for plaintiff's termination and that there is no evidence of pretext because the individual who terminated plaintiff, Michael Feeney, had no personal stake in the CHRO charge and rightly discharged plaintiff given the

---

[10] See, e.g., Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980) (8 month gap between filing of EEOC complaint and retaliatory action suggested a causal relationship); Suggs v. Port Authority of N.Y. & N.J., 97civ4026 (RPP), 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (termination six months after plaintiff filed an EEOC charge was "sufficient close in time to raise an inference of retaliation); Bernhardt v. Interbank of N.Y., 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998) (eleven months between protected activity and termination might suggest causal link where defendant had reasons for delaying termination).

medical prognosis received by defendant.  While defendant has articulated a legitimate nondiscriminatory reason for plaintiff's termination – that it appeared on the basis of the medical report received by defendant that plaintiff would not be able to return to work – plaintiff has succeeded in adducing sufficient evidence of pretext that would permit an inference of discrimination.

First, plaintiff has demonstrated that defendant terminated her in violation of the CBA provision requiring that all covered employees are entitled to a year and a day of sick leave (at the time of her termination, plaintiff had been on sick leave for only approximately seven months).  See Barnhart Aff. Ex. D. Further, plaintiff has shown that Dr. Rubenstein's medical report did not indicate that she would not be able to return to her job prior to the expiration of the year and a day sick leave period, but rather only that Dr. Rubenstein regarded plaintiff as "presently" without "any significant work capacity" and "temporarily totally disabled from any employment."  Rubenstein Report [Doc. # 23-2, Ex. A] at 11.  Defendant did not inquire of plaintiff, Dr. Rubenstein, or either of the other two doctors with whom plaintiff had previously consulted, to determine whether plaintiff would be able to return to work at some future date.  Additionally, in August 2002 when plaintiff contacted Feeney and submitted a return to work form from her physician, Feeney did not rescind his termination decision.  Thus, the

24

summary judgment record contains evidence suggesting that defendant's proffered reason for plaintiff's termination is pretextual and is such that a reasonable jury could infer a retaliatory motive for plaintiff's termination. Defendant's Motion for Summary Judgment on plaintiff's retaliation claims will thus be denied.

## IV.  Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [Doc. # 20] is GRANTED in part and DENIED in part and defendant's Motion to Strike [Doc. # 37] is DENIED.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 17th day of March 2006.**